IN the MATTER OF the ESTATE OF Walter A. LAEV, Jr., deceased: William E. GLASSNER, the Personal Representative of the Estate of Walter A. Laev, Jr., deceased, Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE, Respondent.†

Court of Appeals

*No. 82–2382. Submitted on briefs July 20, 1983.—Decided September 26, 1983.*
(Also reported in 340 N.W.2d 223.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Charne, Glassner, Tehan, Clancy & Taitelman, S.C.,* with *Gregory C. Burce* of counsel, of Milwaukee.

For the respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *John C. Murphy,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J. The Estate of Walter A. Laev, Jr. (Estate) appeals from an order of the trial court entered November 11, 1982, which denied the Estate's petition for a redetermination of the inheritance tax calculated by the Wisconsin Department of Revenue (Depart-

ment). We affirm the trial court's determination that the amount of insurance a decedent was required to maintain for the benefit of his children under a divorce judgment is includible in the decedent's taxable estate for Wisconsin inheritance tax purposes; however, we reverse the trial court's determination that under sec. 72.14,[1] Stats., payment by a life insurance company of

[1] Section 72.14, Stats. reads in pertinent part:

Deductions. (1) Expenditures By A Personal Representative, Special Administrator Or Certain Distributees Out Of Certain Assets In His Possession. Deductions for the following expenditures made by the personal representative or special administrator out of the assets of the decedent in his possession or advanced or paid by a distributee of any assets in his possession are allowed:

(a) Debts of the decedent, including medical expenses and expenses of last illness to the extent not claimed for income tax purposes.

(b) Reasonable funeral and burial expenses.

(c) Expenses of administration to the extent not claimed for income tax purposes.

(d) If known, real estate taxes accrued during the year of the decedent's death, or if such taxes are not known, an amount equal to one-twelfth of the taxes assessed against the land for the preceding calendar year multiplied by the number of months in the calendar year which elapsed prior to the date of death, including the month of death if the death occurred after the 15th day. Deductions allowed under this paragraph shall be considered a lien against the subject real estate reducing its market value.

(e) The estate tax as finally determined by the U.S. government.

(2) Expenditures By Certain Distributees Out Of Certain Taxable Assets In Their Possession. Deductions for the expenses in sub. (1), to the extent not claimed for income tax purposes, paid by a distributee, trustee or other person out of taxable assets not in the possession of a personal representative or special administrator, are allowed to the extent that assets in the possession of a personal representative or special administrator are not sufficient to pay them or to the extent that the distributee, trustee or other person is obligated to pay, or other assets are subject to the payment of, such expenses.

insurance proceeds pursuant to a divorce judgment does not entitle the Estate to a deduction for the amount paid.

## FACTUAL BACKGROUND

The relevant stipulated facts reveal that Walter A. Laev, Jr., (decedent), owned at the time of his divorce in 1977, eleven life insurance policies with a total face value of $248,950. The judgment of divorce provided that:

13. Defendant [decedent] is awarded all his life insurance policies and shall change the beneficiary designations on said policies so that the children of the parties, Walter Gary Laev and Loni Jean Laev are designated beneficiaries for at least $100,000.

In compliance with this provision, decedent designated his children, Gary and Loni, as beneficiaries of all of his life insurance policies. He kept all of the policies in effect until his death in 1979. Subsequent to the divorce, in October, 1978, decedent obtained a loan against one of the policies in the sum of $4,902.55. As a result of his death, decedent's two children received $213,394.13 of insurance proceeds. This sum took into account paid up additions and repayment of any outstanding loans. When the Estate filed its inheritance tax return, it included the total value of the life insurance policies in the sum of $252,546.19 and paid the resulting tax of $17,369.-83. The Department issued its certificate of determination of inheritance tax affirming the submitted amount of the taxable estate and the tax paid. Shortly thereafter, upon review, the Estate filed an amended inheritance tax return claiming that the taxable estate ought to be reduced by the $200,000 of insurance proceeds paid to the children because of the restriction placed on the insurance policies by judgment of divorce. It requested a refund to reflect the decrease in the value of the taxable estate. At the same time the Estate filed a petition for

redetermination of inheritance tax pursuant to sec. 72.30 (4), Stats.[2]

The trial court held that the life insurance proceeds at issue were properly included in decedent's taxable estate under sec. 72.12(7), Stats.[3] It also held that these proceeds were not deductions which the Estate was entitled to as payment of debt under sec. 72.14(2), Stats.

The Estate raises two issues on appeal:

1. whether the amount of insurance the decedent was required to maintain for the benefit of his children under the divorce judgment is includible in the decedent's taxable estate for inheritance tax purposes; and

2. whether under sec. 72.14, Stats., the payment by a life insurance company of a designated amount of insurance proceeds pursuant to a divorce judgment entitled the Estate to deduction for the proceeds paid.

---

[2] Section 72.30(4), Stats. reads as follows:

(4) Hearing In Circuit Court. The attorney general, department, district attorney or any person dissatisfied with the appraisal, assessment or determination of the tax due under this subchapter may apply for a hearing before the circuit court within 6 months from the date the certificate in sub. (3)(c) is issued. The applicant must file a written notice with the court stating the grounds of the application. No statute of limitations shall run against the department in cases of fraud or collusion or where property is not disclosed in the return.

[3] Section 72.12(7) reads as follows:

(7) Insurance. When insurance, except insurance returnable for income taxation and insurance under s. 72.13(2), is payable upon the death of any person and any of the legal incidents of ownership remain in that person at the time of death. Such transfer shall be taxable to the person entitled thereto, irrespective of the source of the premium payments. In this subsection "legal incidents of ownership" in an insurance policy means the right of the insured or the insured's estate to its economic benefits or the power of the insured to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge the policy, for a loan or to obtain from the insurer a loan against the policy's surrender value.

## INCLUSION OF INSURANCE IN TAXABLE ESTATE

In Wisconsin the inheritance tax is a tax on the right to receive property. The taxing event is the transfer of certain classifications of property as defined by statute. Transfers which qualify for the imposition of the tax are enumerated in sec. 72.12, Stats. Here the transfer under inquiry is the payment of certain proceeds of life insurance by the decedent's insurer to his children. Section 72.12, Stats., declares that a tax is imposed on a transfer of insurance proceeds when the proceeds are payable upon the death of the insured, and *any* of the legal incidents of ownership listed in the statute remain in the decedent.

Section 72.12(7), Stats. defines "legal incidents of ownership" as follows:

[T]he right of the insured or the insured's estate to its economic benefits or the power of the insured to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge the policy for a loan or to obtain from the insurer a loan against the policy's surrender value.

Where the Department and a taxpayer cannot agree on the proper application of a specific taxing statute, there are certain applicable rules of construction. *Transamerica Financial Corp. v. Department of Revenue,* 56 Wis. 2d 57, 64, 201 N.W.2d 552, 555 (1972). Unless a statute is unclear and ambiguous, legislative intent must be found by giving the language its ordinary and accepted meaning. When a court is considering the application of a tax deduction provision, strict construction must be employed, but not unreasonably so. *See Ladish Malting Co. v. Department of Revenue,* 98 Wis. 2d 496, 502–03, 297 N.W.2d 56, 58 (Ct. App. 1980); *see also* J. Mertens, Jr., The Law of Federal Income Taxation § 3.04

(1981). Deductions will be allowed when granted by clear language. Where clear language and policy support a deduction, it will not be denied under the general rules of strict construction. *See National Amusement Co. v. Department of Revenue*, 41 Wis. 2d 261, 266–67, 163 N.W.2d 625, 628 (1969).

When material facts are not in dispute and only matters of law are an issue, this court need not give any special weight to the conclusion of the trial court. We may review the record *ab initio* and substitute our judgment for that of the Department or the trial court. *First National Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

In support of its appeal, the Estate first contends that the 1977 divorce judgment was so restrictive as to certain of the life insurance proceeds affected by it that, at the time of his death, the decedent was in effect divested of any of the required "legal incidents of ownership" of the policies. Thus, the payments of $200,000 were not a taxable transfer. The Estate reasons that the divorce judgment explicitly required the decedent to change the beneficiary designations on his policies to the extent that each of his two children would receive at least $100,000. This provision created a legally binding obligation enforceable, if need be, to the extent of $200,000. *See Schroeder v. Schroeder*, 100 Wis. 2d 625, 629–31, 302 N.W.2d 475, 478–79 (1981).

As a basis for its argument, the Estate relies on *Richards v. Richards*, 58 Wis. 2d 290, 206 N.W.2d 134 (1973); *Lee v. Preiss*, 18 Wis. 2d 109, 118 N.W.2d 104 (1962); *Estate of Boyd*, 18 Wis. 2d 379, 118 N.W.2d 705 (1963); *Will of Jones*, 206 Wis. 482, 240 N.W. 186 (1932). These cases stand for the principle that provisions made in a divorce judgment requiring the decedent to maintain preexisting policies of life insurance for the benefit of his children impress a constructive trust upon

the insurance proceeds. The order and the judgment of the trial court vested in the children rights to the proceeds that cannot be defeated by any action of the decedent. In the event the rights to the proceeds are placed in jeopardy by the decedent, certain remedies may be used to make the beneficiaries whole. The Estate, therefore, concludes that, since the decedent was divested of all of the legal incidents of ownership in the insurance policies he was required to maintain for the benefit of his children, the conditions of sec. 72.12(7), Stats., have not been met and thus no taxable transfer occurred.

We agree that the cases of *Richards, Preiss, Boyd,* and *Jones, supra,* all support the principle of impressing a constructive trust on the proceeds of existing policies ordered to be maintained in a divorce judgment. To then conclude, however, that the imposition of the trust has stripped the decedent of all incidents of ownership to eliminate a taxable transfer is not persuasive. If one thing is definite, it is that *Richards, Preiss, Boyd,* and *Jones, supra* do not stand for the proposition that the transfer of insurance proceeds at death is inheritance tax free.

To respond to the Estate's first contention, let us examine what the decedent did and what he did not do with reference to the insurance policies to comply with the trial court order and judgment. After the divorce, the decedent did designate his children as beneficiaries of all his policies of life insurance. He did keep all of the policies in effect until his demise. He did not, however, assign the policies to his children. He did not divest himself of his right to pledge the policies for loans or to borrow against the policies' cash surrender value. In fact, in November, 1978, within two years after the divorce, he exercised one of his retained rights of ownership and obtained a loan against one of the policies in the sum of $4,902.55. The decedent did not completely

divest himself of the power to change the beneficiaries because he was only obligated to keep the sum of $100,000 of insurance in effect for each child without specifying which policies were to be restricted to satisfy this obligation. Lastly, he did not surrender the contingent right to name or to not name secondary or other beneficiaries should either child predecease him.

It is correct that a constructive trust was created in the amount of $200,000, but as the Department points out, it was impressed on a nondiscrete "fungible commodity." This impressment was an obligation that $200,000 in insurance proceeds must exist at the time of death and if it did not, most assuredly a claim for that amount could be filed against other estate assets. Incidents of ownership are a bundle of rights, any one of which can be exercised to beneficial advantage. Succinctly put, we conclude that here the decedent was free to exercise a great deal of power over the policies to his beneficial advantage. This power is a sufficient incident of ownership to constitute a taxable type of property as contemplated by sec .72.12(7), Stats.

As additional support for its position, the Estate directs our attention to sec. 2042(2) of the Internal Revenue Code of 1954 and to federal case law interpreting it. *Hunter v. United States*, 624 F.2d 833 (8th Cir. 1980); *Terriberry v. United States*, 517 F.2d 286 (5th Cir. 1975); *Estate of Skifter v. Commissioner*, 468 F.2d 699 (2d Cir. 1972); *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir. 1970). Treasury Regulation § 20.-2042–1(c)(2) (1983) defines "incidents of ownership." This definition is remarkably similar to the Wisconsin provision with which we are concerned. *See* sec. 72.12 (1), Stats. The conclusions suggested by these cases are as follows: (1) Even if the decedent is found to possess incidents of ownership, he only held the powers in a

fiduciary capacity pursuant to an order and judgment of a trial court; and (2) If the powers possessed by the fiduciary are held solely in a fiduciary capacity where the fiduciary retains no beneficial interest in the policies, the powers do not then constitute an incident of ownership subject to taxation. *Hunter, supra,* at 839–40; *Terriberry, supra,* at 289–90; *Skifter, supra,* at 704–05; *Fruehauf, supra,* at 84–85.

With this line of reasoning we have no quarrel. We find it, however, of little convincing value because as we have already determined that the decedent not only retained beneficial interest in the policies, but that he also exercise the power of the interest and benefited by that action. Therefore, the position propounded and the cases supporting it are clearly distinguishable.

Accordingly, we hold that the trial court did not err when it determined that the amount of the insurance which the decedent was required to maintain for the benefit of his children under the divorce judgment was includible in his taxable estate for Wisconsin inheritance tax purposes.

## DEBT OF DECEDENT

The Estate's second basis for this appeal is the contention that if all of the insurance proceeds paid to the decedent's children are includable in the taxable estate for inheritance tax purposes, it is entitled to a deduction of $200,000 as an expenditure on account of a debt of a decedent, pursuant to sec. 72.14(1)(a), Stats. We agree with this contention.

The trial court determined that the payment of the $200,000 was not a deductible expenditure under sec. 72.14(1)(a), Stats. It concluded that subsections (1) and (2) of that section apply "to expenditures or payments out of assets in possession of the payor ∶ . . . that

neither the personal representative nor the distributees have made any expenditures, and that since the payors are insurance companies there can be no application of these pertinent paragraphs."

In attempting to support the trial court's conclusion, the Department argues that sec. 72.14(2), Stats. requires the existence of three factors for an expenditure to be deductible: (1) a decedent have an outstanding debt at the time of his death; (2) payors who are liquidating the debt bear such a relationship to the decedent that they will be liable for his debts; and (3) the person claiming the deductions has made an expenditure under the first two conditions.

Regarding the first factor which the Department contends must be present, subsec. (1) of sec. 72.14, Stats. specifically provides a deduction for debts of a decedent which have been paid by a personal representative out of the taxable assets in its possession. It also provides the same deduction for the same purpose if paid by a distributee from assets in its possession. Subsection (2) of sec. 72.14 creates an additional group of persons whose actions may create the same allowable deduction. One of the members of this group is an "other person" who pays debts of the decedent out of taxable assets not in the possession of a personal representative. Deductions for the payment of these debts are also allowed to the extent that the "other person is obligated to pay" or the "other assets are subject to the payment." The term "debts of a decedent" is not defined in any section of the inheritance tax chapter except that sec. 72.14(1)(a) does provide that medical expenses and expenses of last illness to the extent not claimed for income tax purposes are included as debts of a decedent.

The absence of a definition in the statute here does not lead us to conclude that the word "debt" is ambiguous.

Section 990.01(1), Stats., states:

General Rule. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning.

We are unaware of any sound reason why in the present context the word "debt" should be construed as a technical word or a word that has a peculiar meaning. We shall therefore endeavor to arrive at the ordinary and approved meaning of the term.

The ordinary and approved meaning of a word can be established by reference to a recognized dictionary such as *Webster's Third New International Dictionary* (1976). *DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 289 (1982).

*Webster's Third New International Dictionary* gives numerous definitions for the noun, "debt." The definition of "debt" lists violations of duty; the state of owing something as money, goods or services by one person to another. Synonyms for "debt" are indebtedness, obligation, or liability.

When the common and approved meaning of the word "debt" is applied to the undisputed facts in this case, we hold that there is no sound basis to conclude the obligation to pay the proceeds of insurance in the sum of $200,000 was not a "debt" of the decedent.[4]

---

[4] As corroborative support for our common usage of the word "debt," we note in sec. 242.01(4), Stats., the following: "Debt" includes any legal liability whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. Also in the 1971 committee comments to sec. 72.14, ch. 859 is to be considered with sec. 72.14, Stats. Chapter 859 claims allowed in probate are many in nature, *e.g.*, absolute, contingent, liquidated or not, presently due or due in the future. The meaning expressed in these statutes is not out of keeping with the common, ordinary usage of the word "debt" which we have adopted.

As to the second factor, doubtless as long as the decedent paid premiums, his life insurers were obliged to discharge their responsibilities pursuant to their insurance contracts. A provision contained in a divorce judgment requiring insurance to be maintained for the benefit of one's children creates a personal liability which can be enforced and satisfied by the filing of a claim against the decedent's estate for the full amount required to be maintained. *Boyd, Richards, Preiss* and *Jones, supra.*

At the time of the divorce, the decedent owned eleven life insurance policies. As long as the policies were in full force and effect, there was a legal obligation of payment to the designated beneficiaries by the insurance companies arising from the contracts. Prior to the entry of the divorce judgment, the decedent stipulated with his wife, on her behalf and on behalf of their two children, "as and for a division of the property of the parties and in lieu of alimony or any other property division" to keep policies in full force and effect and to change the designation of the beneficiaries on the policies so that the decedent's two children were designated beneficiaries for at least $100,000 each. This stipulation entered into by the decedent was a voluntary act. Once the judgment of divorce embodying the stipulation was filed, the relationship of the parties and their respective responsibilities changed. What was originally voluntary, *i.e.*, the provisions of the stipulation, were now obligatory by action of a court and could not be changed but by the court. The decedent was now obliged by the judgment of divorce to keep in effect enough insurance so that at the time of his death there would be proceeds of insurance for each of his children in the sum of $100,000. The affected payor insurance companies now had an obliga-

tion through the decedent by the court to pay the described sums to the appropriate beneficiaries.

The nature of these obligations subjects the insurers to liability if they did not discharge the obligation pursuant to the terms of the contracts and the court ordered judgment. *See Preiss, supra,* at 111–12, 118 N.W.2d 105–06. Thus, the life insurance companies bore such a relationship to the decedent that they would be liable for his court-ordered debt. Accordingly, we hold that the second factor exists in this case.

The third and last factor which the Department argues must be present is that the person claiming the deduction must have made an expenditure for a debt. As the argument continues, since neither the Estate nor the distributee paid the debt no deduction can be allowed. We disagree.

It is rudimentary that, in construing statutes, effect ought to be given if possible to every word, clause and sentence of the statute under examination, so long as such effect does not serve to obstruct the general purpose of the law. Any exercise in statutory construction is not to encourage the creation of language surplusage. *Donaldson v. State,* 93 Wis. 2d 306, 315–16, 286 N.W.2d 817, 821 (1980).

Section 72.14(2), Stats., expressly states that payments by an "other person" of debts of the decedent out of the taxable estate not in possession of the personal representative are deductible. Deductions for this purpose will be allowed to the extent that the "other person" is obliged to pay or that "other assets are subject to the payment." This language is clear and unambiguous. Section 72.01(10), Stats., declares that "a person" includes all partnerships, associations and corporations. In our present fact situation the insurance companies, who

by definition are considered "persons," were obliged to pay the contractual debt, and if they did not, the insurance proceeds constituting the assets would be subject to the payment. *Preiss, supra,* at 111–12, 118 N.W.2d at 105–06. For us to conclude otherwise, as suggested by the Department, would be to ignore the very existence of plain and common statutory language and would thus create the very surplusage which is to be avoided. Accordingly, we hold that the third factor is present here.

The Department opines that to accept the Estate's interpretation of sec. 72.14(2), Stats., would create a sizable loophole in Wisconsin's inheritance tax which is contrary to the policy set forth by the Wisconsin Supreme Court in *Boyd, Richards, Preiss,* and *Jones, supra.* In reading these cases, we are unable to locate the policy which it claims the court either enunciates or endorses. As we have already concluded, the language of sec. 72.14 (2) is clear and cannot be ignored. The projected consequence of such an interpretation, although noteworthy for learned discussion, is more appropriate for legislative attention. Bona fide transactions existing in the clear light of legislative policy are not to be condemned merely because they reduce the taxability of an otherwise taxable event.

In final support for their respective positions in this appeal, the Department refers us to *Kelly v. Glaser,* 271 A.2d 602, 603–04 (N.J. Super. 1970), and *In re Estate of Lingle,* 367 A.2d 878 (N.J. 1976), while the Estate relies on *In re North Carolina Inheritance Taxes,* 277 S.E.2d 403, 409 (N.C. 1981).

*Kelly* stands for the proposition that "where the decedent honors his agreement . . . to make a testamentary provision for others, the interest transferred is taxable under the statutes . . . as passing by the will." *Kelly, supra,* at 603. In *Kelly,* the court confined itself to the precise facts of the case and ruled that given the ex-

istence of a prior marriage settlement contract the surviving ex-wife was entitled "only to payment *under* the will, not to satisfaction of a general claim against the estate for nonperformance of contract." *Id.* at 604. The *Kelly* court acknowledged a New Jersey statute allowing as a deduction from the value of property transferred, "debts of the decedent owing at the date of death," but since it was not examining the debt statute vis-a-vis the inheritance tax law, it eschewed any consideration of it. *Id.*

Subsequently, in *Lingle,* a case from the same jurisdiction, the decedent left his entire estate to his second wife. This testamentary disposition was a breach of an earlier separation agreement entered into by himself and his first wife, wherein he promised to leave one-half of his estate to his two daughters by his first marriage. To resolve the matter, a settlement was reached providing for a payment by the estate of certain sums of money to each daughter. The estate then sought a deduction claiming that the settlement payment to the daughters was a deductible debt. *Lingle, supra,* at 880. The court concluded, without a discussion of the precise terms of the New Jersey state deduction statute, that the claim under examination was not intended to be included as a deduction in the calculation of the transfer inheritance tax. *Id.* at 883.

We note that both of the New Jersey cases relate to testamentary transfers that either occurred or were to occur pursuant to prior marriage settlement agreements. In neither case was there a thorough discussion of the relationship between the statute allowing deductions for debts of the decedent and the inheritance tax on transfers.

*In re North Carolina Inheritance Taxes,* on the other hand, examined this very relationship. Prior to obtaining a divorce, decedent and his wife executed a separa-

tion agreement by the terms of which decedent obligated himself to maintain in force and effect a life insurance trust in the amount of at least $150,000 for her benefit and that of two minor children. Decedent established the trust as required and at the time of his death all of the policies of insurance were in effect. *North Carolina Inheritance Taxes, supra,* at 405. The court concluded that what the former wife bargained for and what she gave up her marital rights for was the proceeds of life insurance payable upon her former husband's death. Under North Carolina law an obligation may be created to provide alimony and child support which survives the husband's death and which constitutes a charge against his estate. *Id.* at 409–10.

In contrast to *Kelly* and *Lingle,* we conclude that the factual setting of the *North Carolina* case, the factors considered, the state of North Carolina's family law and the reasoning process involved are nearly on all fours with the undisputed facts in this case, and therefore, it is far more persuasive in helping us to reach a determination that the payment of the $200,000 in insurance proceeds constitutes a deductible debt of the decedent. In our judgment this conclusion does not impermissibly strain the purpose of sec. 72.14 (2), Stats.

Accordingly, we hold that the payment of the $200,000 insurance proceeds constitutes a deductible debt to the decedent's taxable estate. On remand the trial court is directed to deduct the $200,000 from the decedent's taxable estate.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.