DAVID T. PROSSER, J.
¶ 45. 0dissenting). Michael R. Masters and Patricia A. Johnson were married on October 18, 1986. They were divorced on July 20, 1989. Their divorce judgment, signed by Waukesha County Circuit Judge Robert Mawdsley, made the couple's written marital property agreement part of the judgment. The marital property agreement read in part: "V Property Division — Pension. The Petitioner shall be awarded 1/2 of the value of the Respondent's Wisconsin Retirement System [WRS] benefits accrued from date of marriage thru the date of divorce. A QDRO [qualified domestic relations order] shall be submitted to secure these rights."
¶ 46. For more than 20 years, Patricia Johnson did not submit a QDRO to the WRS or to the court "to secure [her] rights" to a portion of her former husband's pension. Thus, when she attempted to file a QDRO in 2010, her effort was opposed by Masters and ultimately denied by the Waukesha County Circuit Court.[1]
¶ 47. The basis for the circuit court's denial was Wis. Stat. § 893.40, which provides:
Action on judgment or decree; court of record. Except as provided in ss. 846.04(2) and (3) and 893.415, *272 action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred.
¶ 48. The issue presented in this case is whether there is any reasonable basis for Johnson to avoid the apparent effect of this statute. I conclude that there is not.
¶ 49. The majority takes the opposite view. It asserts that it would be an absurdity to apply the statute under the circumstances of this case. Justice Ziegler's concurrence raises the stakes even more and pleads with the legislature to change the law. Inasmuch as I believe the circuit court's decision was correct, the majority's analysis is flawed, and Justice Ziegler's concurrence is mistaken because the statute is reasonable, I respectfully dissent.
I
¶ 50. The facts and circumstances heavily influence the outcome of this case.
¶ 51. Congress approved the Employee Retirement Income Security Act of 1974 (ERISA) to protect the interests of participants in the growing number of employee benefit plans in the private sector throughout the United States. See 29 U.S.C. § 1001. Ten years later, Congress amended ERISA by enactment of the Retirement Equity Act of 1984. See Pub. L. No. 98-397, 98 Stat. 1426 (1984). The purpose of the Retirement Equity Act, which created the "qualified domestic relations order" in 29 U.S.C. § 1056(d), was to facilitate the orderly assignment or alienation of all or a portion of a person's employee benefit plan to an "alternate payee" as the result of a court order or judgment relating to *273 child support, alimony, or marital property rights stemming from divorce. See S. Rep. No. 98-575, at 3, 18-21 (1984) reprinted in 1984 U.S.C.C.A.N. 2547, 2549, 2564-2567.
¶ 52. As the majority opinion notes, however, "ERISA does not apply to government retirement plans." Majority op., ¶ 6 (citing 29 U.S.C.A. § 1003(b)(1)); see also Lindsey v. Lindsey, 140 Wis. 2d 684, 690, 412 N.W.2d 132 (Ct. App. 1987). Consequently, a court's authority to assign or divide a government pension in Wisconsin was and is subject to Wisconsin statute.
¶ 53. On July 20, 1989 — the date of the Johnson/ Masters divorce — Wis. Stat. § 40.08 read in part:
Benefit assignments and corrections. (1) Exemptions. The benefits payable to, or other rights and interests of any member, beneficiary or distributee of any estate under any of the benefit plans administered by the [Department of Employee Trust Funds (the department)], including insurance payments, shall be exempt from any tax levied by the state or any subdivision of the state and shall not be assignable, either in law or equity, or be subject to execution, levy, attachment, garnishment or other legal process except as specifically provided in this section. The exemption from taxation under this section shall not apply with respect to any tax on income.
Wis. Stat. § 40.08(1) (1987-88) (emphasis added). Compare id. with Wis. Stat. § 66.81 (1987-88) (prohibiting the taxation, execution, and assignment of pension benefits in the retirement system of first class cities).
¶ 54. However, the statute continued:
(3) Waivers. Any participant, beneficiary or distributee of any estate may waive, absolutely and without right of reconsideration or recovery, the right to or the payment *274 of all or any portion of any benefit payable or to become payable under this chapter. The waiver shall be effective on the first day of the 2nd month commencing after it is received by the department or on the date specified in the waiver if later.
Wis. Stat. § 40.08(3) (1987-88) (emphasis added).
¶ 55. The gist of these statutory provisions was clear. In July 1989 the benefits payable to a member of the WRS were not assignable in a divorce proceeding except as specifically provided in Wis. Stat. § 40.08. Section 40.08 did not authorize any "qualified domestic relations order." It did, however, permit a member to waive payment of a portion of his or her pension by filing an appropriate waiver with the department.
¶ 56. The legislature changed the law approximately nine months later. See 1989 Wis. Act 218. Newly created Wis. Stat. § 40.08(lm) provided that a participant's accumulated rights and benefits in the WRS shall be divided by "a qualified domestic relations order" but "only if the order provides for a division as specified in this subsection." Wis. Stat. § 40.08(lm) (1989-90) (emphasis added). The specifications in § 40.08(lm), plus the new definition of "qualified domestic relations order" in Wis. Stat. § 40.02(48m), take up more than a full page of the 1989-90 statutes. Wisconsin Stat. § 40.08(lm)(j) pointedly stated: "This subsection applies to qualified domestic relations orders issued on or after April 28, 1990, that provide for divisions of the accumulated rights and benefits of participants whose marriages have been terminated by a court on or after April 28, 1990."
¶ 57. In short, the 1990 changes in the statutes did not apply to the Johnson/Masters divorce.
*275 ¶ 58. In 1998 the legislature amended the statutes again[2] to recognize qualified domestic relations orders issued on or after January 1, 1982, Wis. Stat. § 40.08(lm)(j) (1997-98), and to permit the revision or modification of judgments entered on or after January 1, 1982, to provide for payments under a qualified domestic relations order. Wis. Stat. § 40.08(lm)(k)2. (1997-98). These changes permitted Johnson to take the step outlined in the marital property agreement to secure her rights.
¶ 59. The plain truth is that the property division-pension section of the Johnson/Masters marital property agreement was not valid on the date of the 1989 divorce because the law did not then permit a court to divide Michael Masters' WRS pension. If the law had not changed in 1998, the 1989 property division-pension section of the marital property agreement might never have been eligible to become valid, although it was always possible for Patricia Johnson to secure Masters' written waiver under Wis. Stat. § 40.08(3).
¶ 60. If the 1998 law had been in place on July 20, 1989, Johnson would still have been required by the marital property agreement, the judgment incorporating that agreement, and the applicable statutes to submit a QDRO to the department to secure her rights.
¶ 61. Johnson had 20 years to obtain a QDRO and submit it to the department or at least file it with the court. She did not do so, even though such a QDRO was specifically authorized by law in her situation from May 2,1998, through July 20, 2009 — that is, for more than 11 years — and even though she signed a draft QDRO after the divorce. There is no evidence that Johnson sought a *276 court order or contempt to force Masters to comply with the marital property agreement by signing the draft QDRO or a revised QDRO.
¶ 62. Johnson also had 20 years to obtain a written waiver from Masters, either voluntarily or through court action. She did not do so, even though the Waukesha County Circuit Court held post-divorce hearings in the Johnson/Masters case in 1995 and 1996 and issued orders in the case in 1995, 1996, and 2004.
¶ 63. In addition, Johnson had almost nine years to seek to amend the judgment to obtain the cash equivalent of her pension share in lieu of a QDRO, during the period when a QDRO was not authorized by statute in her case. After that time, she could have pursued multiple options, including an effort to secure the cash equivalent.
¶ 64. Johnson's interest in a portion of Masters' pension was always contingent upon her taking steps to secure and enforce her rights. She did not do so until more than 20 years after the divorce judgment.
¶ 65. In pointing the finger at Johnson for failing to take the required action to protect her rights, one is actually pointing at her divorce counsel.[3] There is no allegation by Johnson that Masters' divorce counsel failed to do something that he committed to do. This case, then, reveals more than 20 years of unexplained inaction and neglect. It is hardly an "absurdity" for a court to take that inaction into account.
*277 II
¶ 66. Johnson's inaction over a 20-year period is significant because of Wis. Stat. § 893.40, the 20-year statute of repose. The statute provides, in part, that "action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred." Wis. Stat. § 893.40 (emphasis added).
¶ 67. The history and purpose of Wis. Stat. § 893.40 deserve discussion. The court also should discuss Johnson's attempt to get around the statute by arguing that her effort to secure a QDRO was not "an action upon a judgment."
¶ 68. Wisconsin Stat. § 893.40 became law in 1980. See 1979 Wis. Act 323. It combined and modified the provisions of two repealed statutes, Wis. Stat. §§ 893.16(1) and 893.18(1). The former statute had provided a 20-year statute of limitations: "Within 20 years. Within 20 years: (1) An action upon a judgment or decree of any court of record of this state or of the United States sitting within this state." Wis. Stat. § 893.16(1) (1977-78).
¶ 69. The latter statute had only a 10-year statute of limitations: "Within 10 years. Within 10 years: (1) An action upon a judgment or decree of any court of record of any other state or territory of the United States or of any court of the United States sitting without this state." Wis. Stat. § 893.18(1) (1977-78).
¶ 70. The new Wis. Stat. § 893.40 established a uniform 20-year time limit for an "action upon a judgment or decree" and specified that the 20 years began to run when the "judgment or decree is entered." It added that a failure to timely commence action would *278 "bar[]" future action upon a judgment. These changes transformed two statutes of limitation into a single statute of repose.
¶ 71. "A statute of repose . . . limits the time period within which an action may be brought based on the date of an act or omission." Hamilton v. Hamilton, 2003 WI 50, ¶ 29, 261 Wis. 2d 458, 661 N.W.2d 832. The "act" that triggers the statute of repose in Wis. Stat. § 893.40 is the entry of a judgment. See generally, Daniel J. La Fave, Remedying the Confusion Between Statutes of Limitation and Statutes of Repose in Wisconsin — A Conceptual Guide, 88 Marq. L. Rev. 927 (2005).
¶ 72. Limitation periods in statutes of limitation and statutes of repose are "legislative pronouncements of policy barring actions for various policy reasons regardless of the merit of the action." Hamilton, 261 Wis. 2d 458, ¶ 42 (citations omitted). These statutes are meant to "ensure prompt litigation of claims and to protect defendants from fraudulent or stale claims brought after memories have faded or evidence has been lost." Korkow v. Gen. Cas. Co. of Wis., 117 Wis. 2d 187, 198, 344 N.W.2d 108 (1984). As this court explained in Aicher:
Statutes of limitation and statutes of repose represent legislative policy decisions that dictate when the courthouse doors close for particular litigants. . .. [These statutes] "are found and approved in all systems of enlightened jurisprudence," [and] articulate the principle that it is more just to put the adversary on notice to defend a claim within a specified period of time than to permit unlimited prosecution of stale claims.
Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶ 27, 237 Wis. 2d 99, 613 N.W.2d 849 (quoting United States v. Kubrick, 444 U.S. 111, 117 (1979)).
*279 ¶ 73. Wisconsin Stat. § 893.40 has no exception for family law cases except for actions to collect child support payments. See Wis. Stat. § 893.415. This specific exception was created following the court's decision in Hamilton, which discussed § 893.40 extensively.[4]
¶ 74. The court in Hamilton said Wis. Stat. § 893.40 was "plain and unambiguous" as to the act that begins the 20-year period. Hamilton, 261 Wis. 2d 458, ¶ 30. This means that the statute is not triggered by the subsequent "accrual" of a right, as the majority mistakenly suggests. Thus, Hamilton's interpretation of § 893.40 should decide this case unless Johnson's effort to secure a QDRO in 2010 was not an "action upon a judgment."
¶ 75. This possibility is raised in the certification from the court of appeals and argued by Johnson in this review.
¶ 76. The argument is grounded in the text of Wis. Stat. § 893.02:
Except as provided in s. 893.415(3), an action is commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming the defendant and the complaint are filed with the court, but no action shall be deemed commenced as to any defendant upon whom service of authenticated copies of the summons and complaint has not been made within 90 days after filing.
Wis. Stat. § 893.02 (emphasis added).
¶ 77. The certification states that an "argument could be made that an 'action' is a proceeding which is *280 begun by a summons and complaint and that an action upon a judgment or decree of a court of record therefore means any judgment that was commenced by a summons and complaint." The certification added that this was part of the rationale used in Lueck v. Lueck, No. 2011AP1195, unpublished slip op. (Wis. Ct. App. Oct. 12, 2011), review denied (Mar. 2, 2012), where the court of appeals said Wis. Stat. § 893.40 did not pertain to actions begun by a motion and order to show cause because motions and orders to show cause "are not a summons and complaint." Id., ¶ 9.
¶ 78. The argument that Johnson's effort to secure a QDRO in 2010 was not an action upon a judgment must be addressed.
¶ 79. Wisconsin Stat. §§ 893.02 and 893.40 both have their origins in early Wisconsin law. Revised Wisconsin Stat. Chapter 138, § 15 (1858), provided: "Within twenty years: — 1. An action upon a judgment or decree of any court of record of this state."
¶ 80. Section 27 of the same chapter then provided, in part, that "[a]n action shall be deemed commenced as to each defendant, when the summons is served on him, or on a co-defendant, who is a joint contractor or otherwise united in interest with him." Wis. Stat. ch. 138, § 27 (1858) (emphasis added).
¶ 81. These two statutes were accompanied by two other provisions of note. Section 2 of Chapter 122 of the 1858 Revised Statutes provided that, "[a]n action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the prevention of a public offense." Wis. Stat. ch. 122, § 2 (1858).
¶ 82. Section 10 of Chapter 122 provided:
*281 No action shall be brought upon a judgment rendered in any court of this state, except a court of the justice of the peace, between the same parties, without leave of the court, for a good cause shown, on notice to the adverse party; and no action on a judgment rendered by a justice of the peace shall be brought in the same county within two years after its rendition, except in cases of his death, resignation, incapacity to act, or removal from the county, or that the process was not personally served on the defendant, or on all the defendants, or in case of the death of some of the parties, or when the docket or record of such judgment is or shall have been lost or destroyed.
Wis. Stat. ch. 122, § 10 (1858) (emphasis added).
¶ 83. These statutes suggest that "action" was an "ordinary proceeding," as opposed to a special proceeding, and that sometimes this "action" required a "summons" and sometimes it required "notice to the adverse party."
¶ 84. The essence of Wis. Stat. § 893.40 appears again in chapter 177, section 4220 of the 1878 Revised Statutes: "Within twenty years: 1. An action upon a judgment or decree of any court of record of this state, or of the United States, sitting within this state."
¶ 85. The forerunner of present Wis. Stat. § 893.02 (regarding summons and complaint) was found in Chapter 177, Section 4239 of the 1878 Revised Statutes:
An action shall be deemed commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him.
Wis. Stat. ch. 177, § 4239 (1878) (emphasis added).
*282 ¶ 86. The 1878 Revised Statutes also maintained the definition of "action" in the new Section 2595 of Chapter 118 but eliminated the second reference to "action upon a judgment" that had appeared in Chapter 122, Section 10 of the 1858 Revised Statutes.
¶ 87. By 1925 the language in Section 4220 of the 1878 Revised Statutes appeared without change (except for punctuation) in Wis. Stat. § 330.16 (1925).[5] The language of Section 4239 of the 1878 Revised Statutes appeared in Wis. Stat. § 330.39 (1925). The definition of "action" from 1878 continued in Wis. Stat. § 260.03 (1925).
¶ 88. Sections 330.16 and 330.18 were renumbered as §§ 893.16 and 893.18 in § 2, ch. 66, Laws of 1965. Wisconsin Stat. § 330.39 was renumbered § 893.39 in the same chapter.
¶ 89. In 1975 the supreme court adopted the Wisconsin Rules of Civil Procedure, effective January 1, 1976. See 67 Wis. 2d 585, 585-784 (1975). Wisconsin Stat. § 893.39 was amended "to conform to the proposed mode of commencement of action under s. 801.02(1)." Id. at 770-71. It read:
Action, when commenced. An action shall be deemed commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming him as defendant and the complaint are filed with the court, but no action shall be deemed commenced as to any defendant upon whom service of authenticated copies of the summons and complaint has not been made within 60 days after filing.
Id. at 770-71 (emphasis added).
*283 ¶ 90. This amended section was repealed and recreated as Wis. Stat. § 893.02 by Section 28, Chapter 323, Laws of 1979, the chapter that repealed and recreated all of Wis. Stat. Chapter 893. Chapter 323 is the same chapter that created Wis. Stat. § 893.40, the statute of repose at issue in this case.
¶ 91. In sum, Johnson's argument depends in large part on whether the supreme court redefined "action upon a judgment" when it added "complaint" to Wis. Stat. § 893.39 in 1975.
¶ 92. There are several cases prior to the 1975 change that suggest "action upon a judgment" was broadly construed to include "actions" beyond the filing of a new lawsuit.
¶ 93. In Coon v. Seymour, 71 Wis. 340, 345-46, 37 N.W. 243 (1888), the court explained "action upon a judgment." The court said:
We do not understand this [case] to be an action upon a judgment which may be brought within twenty years after the cause of action accrued, within the meaning of sec. 4220, R.S. Such an action is to confirm and enforce a judgment. This, on the contrary, is an action to avoid and set aside a judgment for alleged causes existing outside of the record.
Id. (emphasis added). An action to "confirm and enforce a judgment" is not a new lawsuit.
¶ 94. In Brown v. Hopkins, 101 Wis. 498, 77 N.W. 899 (1899), the court discussed a judgment of foreclosure entered on December 10, 1877, and an execution issued upon that judgment on December 3, 1897, and a subsequent levy on real estate, both within the 20-year statute of limitations. The court said:
The question is whether an execution which is duly issued and partially executed by levying upon property *284 within twenty years from the entry of a judgment expires at the end of the twenty-year period, or whether it remains valid and effective, so that the property so levied upon may be thereafter sold and applied to satisfy the command of the writ. Our statute provides (R.S. 1878, sec. 4220) that a judgment of a court of record outlaws at the end of twenty years from the date of its rendition; and, further (R.S. 1878, sec. 2968), that "in no case shall an execution be issued, or any proceedings had on any judgment, after twenty years from the time of the rendition thereof." It is very evident from this latter section that a valid execution may be issued at any time up to the last day of the twenty years; and the question is whether, when so issued, it is rendered void by the limitation upon the judgment. Our statute requires no order of confirmation of the sheriffs sale, nor any other proceeding by the court, to perfect the purchaser's title. No further proceedings upon the judgment are contemplated or required by the statute. The sale of the property by the sheriff, and the payment or application of the proceeds, are simply the carrying out of the commands of his writ, which, when issued, was perfectly valid.
Brown, 101 Wis. at 499-500.
¶ 95. The Brown case shows that "execution" upon a judgment was required within the 20-year period. "Execution" was not a new lawsuit.
¶ 96. In Zellmer v. Sharlein, 1 Wis. 2d 46, 82 N.W.2d 891 (1957), a daughter filed a claim against her late father's estate. When the daughter's mother and father were divorced, the divorce judgment had incorporated a stipulation that required the father to pay the premiums on an insurance policy on his life for the benefit of the daughter. Id. at 47. The father failed to pay the premiums. Id. at 48. As a result, when the father died and left nothing for the daughter (on grounds that he had provided for her by the life *285 insurance policy), she filed and litigated a claim against his estate. Id. The court rejected a defense that the claim was barred by a six-year statute of limitations for breach of contract. Id. at 52. It concluded that the claim was within the 20-year statute of limitations for a claim upon a judgment, namely, the divorce judgment. Id. The claim did not constitute a new lawsuit.
¶ 97. In Schafer v. Wegner, 78 Wis. 2d 127, 254 N.W.2d 193 (1977), the plaintiff commenced an action to recover personal property awarded to her in a divorce judgment in 1957. The suit was commenced in 1973, within the 20 years set out in Wis. Stat. § 893.16(1) (1971-72). Id. at 130-31. The court observed that, "[t]he household furniture was awarded to the appellant in the divorce decree and the statute of limitations concerning actions based on that award is twenty years." Id. at 132. Although the plaintiffs suit was timely filed under the statute, this court dismissed it on grounds of laches. Id. There is no evidence in the opinion that the court would have viewed a "motion" different from a new suit under the statute of limitations. Rather, the court cut off the plaintiff after a shorter time period.
¶ 98. Coon, Brown, Zellmer, and Schafer suggest that courts have viewed "action upon a judgment" broadly, not restricting an "action" to a proceeding that required a summons and complaint. The question here is whether that view changed in 1975 when the court modified the language in Wis. Stat. § 893.39 (1973-74).
¶ 99. There are at least four reasons why this court should not adopt any theory that Wis. Stat. § 893.40's time limitation applies only to proceedings commenced by a summons and complaint.
¶ 100. First, this theory depends upon a conclusion that this court contravened its rulemaking authority when it amended Wis. Stat. § 893.39 in 1975.
*286 ¶ 101. In 1975 Wis. Stat. § 251.18, the predecessor to present Wis. Stat. § 751.12, contained the same critical language found in present law, namely, with respect to court-made rules of pleading, practice, and procedure, "Such rules shall not abridge, enlarge or modify the substantive rights of any litigant." If the court's 1975 amendment to Wis. Stat. § 893.39 (1973-74) narrowed the statute of limitations so that it applied only to proceedings initiated by summons and complaint — thereby removing the limitation on motions, orders to show cause, claims, executions, and the like — the court would have violated § 251.18 because it clearly would have abridged, enlarged, or modified the substantive rights of persons affected by judgments.
¶ 102. "In Wisconsin, unlike many states, the running of the statute of limitations extinguishes the right as well as the remedy; if the statute has run, the cause of action no longer exists." Schafer, 78 Wis. 2d at 134. "The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection." Maryland Cas. Co. v. Beleznay, 245 Wis. 390, 393, 14 N.W.2d 177 (1944) (citations omitted).
¶ 103. Second, an interpretation that Wis. Stat. § 893.40 is inapplicable to motions, orders to show cause, and other proceedings not requiring a "complaint" would mean, in effect, that there would be no time period for a party to bring certain kinds of actions upon a judgment. This would effectively remove the limitation, creating tremendous uncertainty, because it would be replaced with the far-less-certain doctrine of laches. See Schafer, 78 Wis. 2d at 132.
*287 ¶ 104. It is hard to imagine that this court would purposely gut a longstanding statute of limitations at the very time it was speaking of the constitutional significance of such statutes in court decisions.
¶ 105. Third, an interpretation that Wis. Stat. § 893.40 is inapplicable to motions, orders to show cause, and other proceedings not requiring a complaint could have serious adverse consequences outside family law. Masters argues that the principle stated in the Lueck decision would leave many post-judgment collection actions without any time limitation to commencement. He points to earnings garnishments and executions as examples. In the absence of a specific statute limiting a particular enforcement mechanism upon a judgment, this concern is well founded.
¶ 106. Fourth, the legislature concluded that Wis. Stat. § 893.40 applied to a broad array of "proceedings" when it created Wis. Stat. § 893.415 after the Hamilton decision. Subsection (1) defines "action" in the section to mean "any proceeding brought before a court, whether commenced by a petition, motion, order to show cause, or other pleading." This broad definition would be superfluous if § 893.40 were inapplicable to anything other than a proceeding commenced with a summons and complaint.
¶ 107. There are various ways to interpret Wis. Stat. §§ 893.40 and 893.02. The latter section provides a surefire way of acting "upon a judgment" before a statute of limitations or a statute of repose has run. See Lak v. Richardson-Merrell, Inc., 100 Wis. 2d 641, 649, 302 N.W.2d 483 (1981). Whether the wording of § 893.02 was expected or intended to curtail what an "action" was is much more speculative. The enactment of § 893.40, on the other hand, signified a clear objective: a statute of repose eliminated issues about accrual *288 because the statute begins to run at a definite time, based on an event, not an indefinite time based upon the accrual of a right. The majority opinion has the effect of disregarding the legislature's clearly stated objective.
Ill
¶ 108. Justice Ziegler's concurrence presents a different problem. Justice Ziegler writes that some family court judgments and orders may necessitate jurisdiction for longer than 20 years, such as the payment of retirement benefits, maintenance issues, or life insurance proceeds. In my view, courts will employ reason and common sense in dealing with questions about the enforcement of judgments.
¶ 109. For instance, some judgments, like the Johnson/Masters divorce judgment, require some additional step or steps to secure a right. Filing a QDRO protects the rights of the "alternate payee" with respect to both public and private retirement benefits. Enforcing a properly filed QDRO is not barred by Wis. Stat. § 893.40.
¶ 110. Other judgments are not only final but also complete, in the sense that no additional steps are required by a party seeking to enforce a right. These in essence are continuing judgments.
¶ 111. For instance, a judgment that requires an insured to pay premiums and designate a specific beneficiary needs no additional action by the beneficiary. The beneficiary has a property right and may enforce that right against the insured or the insured's estate when the insured violates that right. See Richards v. Richards, 58 Wis. 2d 290, 298-99, 206 N.W.2d 134 (1973). In other words, the insured may not change the *289 beneficiary more than 20 years after the entry of the judgment and expect that he or she has not created a new cause of action for the original beneficiary. Glassner v. DOR, 115 Wis. 2d 168, 181, 340 N.W.2d 223 (Ct. App. 1983).
¶ 112. As another example, in Ashby v. Ashby, 174 Wis. 549, 183 N.W. 965 (1921), this court said that alimony was a "continuing judgment, always subject to modification by the court during the life of the parties," and thus a statute of limitations did not apply. Ashby, 174 Wis. at 554.[6] The suggestion that a party could simply stop paying alimony or maintenance after 20 years, as a result of Wis. Stat. § 893.40, is not reasonable or realistic because of the continuing nature of the obligation to pay. Cf. Rintelman v. Rintelman, 118 Wis. 2d 587, 348 N.W.2d 498 (1984); Estate of Barnes, 170 Wis. 2d 1, 12-13, 486 N.W.2d 575 (Ct. App. 1992).
¶ 113. A party can protect its interests in a judgment by timely action and by careful wording of the judgment. Wisconsin Stat. § 893.40 is designed to discourage people from sleeping on their rights. The statute is not likely to be used against people who are wide awake and conscious of the need to assert their interests.
¶ 114. For the foregoing reasons, I respectfully dissent.

 Kathryn W Foster, Judge.

 See 1997 Wis. Act 125.

 See Scott L. Dennison, Valuing Retirement Benefits in Divorce, Wis. Lawyer, June 2012, at 10-11 ("Lawyers who work on divorces that involve QDROs have been magnets for malpractice suits, because a poorly designed QDRO can be a real disaster.").

 Wisconsin Stat. § 893.415(1) defines "action" as "any proceeding brought before a court" to collect child or family support.

 The 10-year statute of limitations for "action upon a judgment... of any court of record of any other state" appeared in Wis. Stat. § 330.18(1) (1925).

 However, because Mrs. Ashby waited so long to seek back payments for alimony, she could not get everything that her ex-husband owed her. Ashby v. Ashby, 174 Wis. 549, 555-56,183 N.W. 965 (1921). Fully enforcing the judgment after 44 years was not fair to the ex-husband, since he no longer had any way to earn money. Id.